**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **VS.** | ) | **CR 07-0091-01ML** |
| | ) | |
| **ONESIMO ARIAS** | ) | |

---

MOTION FOR SENTENCE CONSIDERATION

Now comes Onesimo Arias, the Defendant in the above captioned matter, and moves this Honorable Court, pursuant to Local Rule of Criminal Procedure 32 (2006), to consider and impose a sentence that is sufficient, but not greater than necessary, in compliance with18 U.S.C. § 3553(a), and below the suggested advisory guideline range. After considering all the appropriate information present in this case, the Court should conclude that the advisory guidelines call for a sentence significantly longer than necessary. Mr. Arias requests the Court impose a sentence of 12 monthsand one day of incarceration followed by supervised release with the appropriate conditions. Under the unique circumstances presented here, this sentence will be sufficient to satisfy the purposes of sentencing.

Respectfully submitted
Onesimo Arias
By his attorney,

/s/ Mary S. McElroy, 4830
Assistant Federal Defender
10 Weybosset St., Ste. 300
Providence, RI 02903
(401) 528-4281
FAX 528-4285
mary_mcelroy@fd.org

CERTIFICATION

I hereby certify that a copy of this motion was electronically filed with notice to Heather McLoughlin, United States Probation Officer, and Zechariah Chafee, Assistant United States Attorney, on November 30, 2007.

/s/ Mary S. McElroy

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **VS.** | ) | **CR 07-0091-01ML** |
| | ) | |
| **ONESIMO ARIAS** | ) | |

---

**DEFENDANT'S SENTENCING MEMORANDUM**

## I. INTRODUCTION

Through counsel, Onesimo Arias respectfully submits the following memorandum in support of his Motion for Sentencing Consideration.

## II. FACTS AND TRAVEL

Mr. Arias is charged in a one-count indictment with Illegal Reentry After Deportation. In violation of 8 U.S.C. § 1326(a) and (b)(2). Mr. Arias originally entered the United States in 1988 on an immigrant visa from the Dominican Republic. He was deported on October 24, 1996. On May 9, 2007 Agents from the Bureau of Immigration and Customs Enforcement took custody of Mr. Arias at the Adult Correctional Institution. This indictment and plea followed.

## III. SENTENCING CONSIDERATIONS

In determining the appropriate sentence for a criminal defendant the court is bound to consider the sentencing factors set forth in 18 U.S.C. §3553(a). These factors include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed --
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>> (B) to afford adequate deterrence to criminal conduct;
>> ( C ) to protect the public from further crimes of the defendant; and
>> (D) to provide the defendant with needed educational or vocational training,

medical care, or other correctional treatment in the most effective manner;
(3) the kinds of sentence available;
(4) the kinds of sentence and the sentencing range established for...
(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines...;
(5) any pertinent policy statement...[issued by the Sentencing Commission];
(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
(7) the need to provide restitution to any victims of the offense

18 U.S.C. §3553(a). After taking all of those factors into account the court must impose a sentence that is tailored to this individual case and this individual defendant. The sentence must be "sufficient, but not greater than necessary" to achieve the goals and purposes of sentencing. 18 U.S.C. §3553(a). This provision, the so called "parsimony provision", represents the ultimate goal of sentencing and reflects the maximum sentence that the court may impose regardless of what is recommended by the advisory guidelines. *United States v. Denardi*, 892 F.2d 269, 276-77 (3rd Cir 1989) (Becker, J., concurring in part, dissenting in part).

The United States Supreme Court decision in *U.S. v. Booker*, 543 U.S. 220 (2005) rendered the Federal Sentencing Guidelines advisory rather than mandatory. *See also Rita v. United States,* No. 5754, 2007 U.S. Lexis 8269 (June 21, 2007). Instead of being bound by the Sentencing Guidelines, *Booker* now "requires a court to consider Guideline ranges, . . . but permits the court to tailor the sentence in light of other statutory concerns as well" *Booker,* 543 U.S. at 245-246.

The district court may now consider even those mitigating factors that the advisory guidelines prohibit or make irrelevant: e.g., poverty, racial discrimination and humiliation, drug abuse and addiction, dysfunctional family background, lack of guidance as a youth, etc. *See United States. Thurston*, 456 F.30 211, 219 (1st Cir. 2006); *United States v. Jimenez-Beltre*, 440 F.3d 514, 527 (1st Cir. 2006) s*ee also* 18 U.S.C. § 3661 ( "no limitation shall be placed on the

information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence," cited in *Booker* 125 S.Ct. at 758).

Although no longer mandatory, the Federal Sentencing Guidelines are still a factor that the court must consider in making the ultimate determination of the appropriate sentence to impose in any criminal case. However, the guidelines are *"generalizations* that can point to outcomes that may appear to be unreasonable to sentencing judges in particular cases[,]" *United States v. Jimenez-Beltre*, 440 F.3d 514 (1st Cir. 2006) (emphasis in original).

In the recent *Rita* decision the United States Supreme Court ruled that while an appellate presumption that the guideline sentence is appropriate is permissible, such a presumption on the District Court level is not. *Rita,* 2007 U.S. Lexis 8269, at **16 and **25. "[T]he presumption reflects the fact that, by the time an appeals court is considering a within-Guidelines sentence on review, *both* the sentencing judge and the Sentencing Commission will have reached the *same* conclusion as to the proper sentence in the particular case. That double determination significantly increases the likelihood that the sentence is a reasonable one." *Rita* at **17. (emphasis supplied).

A presumption of reasonableness does not apply on the district court level. *Id. at **25.* The district court judge sentencing a defendant must, therefore, "calculate the advisory sentencing guideline range accurately, so that they can derive whatever insight the guidelines have to offer, but ultimately they must sentence based on 18 U.S.C. § 3553(a) without a thumb on the scale favoring a guideline sentence." *United States v. Sachsenmaier*, 491 F.3d 680, 685 (7th Cir. 2007) (interpreting *Rita).* The defendant respectfully requests that this Honorable Court impose a sentence below the advisory guideline range.

## IV. PERSONAL HISTORY

Mr. Arias is a 35 year old man who first came to this country, from the Dominican Republic, when he was fourteen years old. At that time he relocated to New York City with his father. He left his mother and siblings in the Dominican Republic. In 1991 Mr. Arias moved to Rhode Island where he remained until his deportation in 1996.

Mr. Arias maintains a long term relationship with Dally Celado. Mr. Arias and Ms. Celado have two children; Ismael age 9 and Dyanara age 4. Ms. Celado and her children are supportive of Mr. Arias and visit him at the prison on a regular basis. Ms. Celado will relocate to the Dominican Republic with Mr. Arias after he completes his jail sentence.

Mr. Arias has another child, Jazmin, who is fifteen years old. Jazmin lives with her mother Milagros Resto. Mr. Arias has supported his children and their mothers. It should be noted that the child support order remained in effect during the ten years that Mr. Arias resided outside of the United States after his deportation. Although there was a significant arrearage, it is not indicative of the actual support that Mr. Arias provided to his children.[1]

**Criminal History**

Mr. Arias's criminal history has earned him a criminal history category of I. Although he has several arrests and convictions that are not counted for criminal history points, the court should not use this fact to increase Mr. Arias's sentence. The drafters of the sentencing guidelines have taken into account the fact that some criminal convictions will not count for the purposes of determining criminal history categories. As a result it was clearly the policy of the drafters of the guidelines that some defendants who have old convictions would be placed in the lowest criminal

---

[1] The PSR notes that the total amount of support owed by Mr. Arias was $47 per week over a period of thirteen years. That total would only be approximately $32,000 if no support at all had been paid during that time.

history categories. *See* USSG § 4A1.1(a) and (b), USSG § 4A1.1, comment. (n. 1), USSG § 4A1.1, comment. (n.2). Convictions which are too old to be counted for criminal history points are similarly not contemplated as a basis for an upward departure in USSG § 4A1.3, p.s.

As a result the Court should not impose a higher sentence or depart upward as a result of Mr. Arias's criminal history.

## V. NATURE AND CIRCUMSTANCES OF THE CHARGE

Like most defendants charged in illegal re-entry cases, Mr. Arias returned to the United States to work, make money, and help support his family. Illegal reentry on its face appears to be a serious felony offense carrying up to 20 years in prison. In reality the seriousness of this offense can only be determined by looking at the individual facts and circumstances of each case. The seriousness of Mr. Arias's offense of reentry is mitigated by the age of his predicate. After Mr. Arias came back to the United States he did not return to illegal activity, he went to work. Ultimately the Court should find that Mr. Arias's offense was not particularly serious because he did not present a danger to the community upon his return, and any danger he presented based on his criminal activity in the 1990's has been tempered by the passage of time. There is no aggravating circumstance involved in his return.

## VI. DETERRENCE AND THE NEED TO PROVIDE EDUCATION OR VOCATIONAL TRAINING 18 U.S.C. §3553(a)(2)(D)

**Deterrence**

The issue of deterrence is difficult to assess when the offense is illegal reentry. The overwhelming reason defendants return to the United States is economic. People come from around the world, both legally and illegally, to take advantage of opportunities which are simply

not available in their home countries. The prospect of incarceration has no effect on the individual's economic circumstance. There is no support for the notion that a longer sentence has more deterrent value. *See* United States Sentencing Commission, Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines, 11-16, Ex. 12 (May, 2004).

For Mr. Arias, his time in custody thus far has served as a powerful deterrent. He has not been able to help support his family during this time. Further incarceration will not serve to increase any deterrent value of this sentence.

**Bureau of Prisons treatment of illegal aliens**

Aliens with immigration detainers are not eligible for community confinement or halfway house placement. Such inmates are not required to attend and are given low priority in enrolling in literacy programs. 28 C.F.R. §544.71(a)(3). Similarly they are not required to attend in English as a Second Language programs. 28 C.F.R. §544.41(a)(3). Because of their inability to participate in these programs, they may not meet the literacy prerequisites for work in UNICOR above the most minimal grade. 28 C.F.R. §544.74(a); *see also* BOP Operations Memorandum 071-96(8120) precluding sentenced aliens with deportation detainers from working except in the lower paying non-federal prison industry jobs.

The disparate treatment given by the Bureau of Prisons to those sentenced aliens means that Mr. Arias will not likely be provided with the skills needed to improve his situation in the Dominican Republic. Incarceration will simply warehouse him. As this warehousing will not further the objectives of 18 U.S.C. §3553(a)(2)(D), a reduced sentence is appropriate.

**Mr. Arias has a promise of employment upon his return to the Dominican Republic**

Mr. Arias has secured a promise of employment once he returns to the Dominican

Republic. This should ensure that he has the ability to support himself and provide for his family. Since his motivation to return to the United States was in large part economic, a job would be incentive for him to remain outside of the United States and not seek to return to find employment. A letter from his future employer, along with the English language translation, is attached to this memorandum.

## VII. CONCLUSION

Mr. Arias respectfully requests that the court impose a sentence of one year and one day of confinement. This sentence is "sufficient, but not greater than necessary" to achieve the goals and objectives of sentencing. A more severe sentence would not achieve greater justice, deterrence, incapacitation or rehabilitation. In Mr. Arias's case, under these circumstances, a guidelines sentence cannot be justified.

Respectfully submitted
Onesimo Arias
By his attorney,

/s/ Mary S. McElroy, 4830
Assistant Federal Defender
10 Weybosset St., Ste 300
Providence, RI 02903
(401) 528-4281FAX 528-4285
mary_mcelroy@fd.org

CERTIFICATION

I hereby certify that a copy of this memorandum was electronically filed with notice to Zechariah Chafee, Assistant United States Attorney and Heather McLoughlin, USPO, on November 30, 2007.

/s/ Mary S. McElroy